Thank you, Mr. Chief Judge, and may it please the Court. My client, Mr. Herrold, was convicted of two offenses that Texas calls burglary, but neither one of those offenses satisfies the Armed Career Criminal Act's federal generic definition of burglary. Therefore, these prior offenses were not violent felonies, and Mr. Herrold is not an armed career criminal. On the first issue, we focus on Texas's definition of habitation. That's found in Texas Penal Code Section 30.01, paragraph 1. Specifically, we ask whether burglary of a vehicle that has been adapted for the overnight accommodation of persons is a generic burglary. On the second issue, which concerns Penal Code Section 30.02A3, there is both a substantive question, that is whether A3 describes a generic burglary, and a procedural question, whether these two subsections, A1 and A3, represent a single burglary offense or two different burglary offenses. Starting with the first issue, Texas's definition of habitation. The Supreme Court stated in Shepard v. United States that the Act makes burglary a violent felony only if it's committed in a building or enclosed space, not in a boat or a motor vehicle. Mathis called this the locational element of generic burglary. But in Texas, a defendant can be convicted of burglary of a habitation for breaking into any vehicle that has been adapted for the overnight accommodation of persons. As we showed in the district court, Texas does not insist that these adapted vehicles actually be used as homes or even for camping. The prosecution isn't even required to prove that someone had ever slept in the vehicle. We provided a case to the district court in which a defendant was convicted of multiple counts of burglary of a habitation for vandalizing unused vehicles parked not at a campground but at a storage facility. Now, the government asked this court to expand the Supreme Court's locational element of generic burglary to include these adapted vehicles. I can think of five main reasons why this court should reject the government's invitation to expand the definition. First, the Supreme Court has said repeatedly and without exception that there is a good rule of thumb for interpreting these decisions. What they say and what they mean are one and the same. Second, the Third, Fourth, Sixth, Eighth, Ninth, and Eleventh circuits have all recognized that burglary of an adapted vehicle is still burglary of a vehicle and therefore is not generic burglary. And a panel of this court recently agreed regarding Ohio's burglary of an adapted vehicle crime. Now, Judge Higginbotham has written that the overarching objective of the categorical approach is to achieve equality in federal sentencing. If this court were to hold that generic burglary includes crimes committed against adapted vehicles, then it would be in direct conflict with all of these other circuits. And that would lead to widely divergent sentences based solely on the accident of geography of the prosecution. The third reason, Mr. Harreld's interpretation preserves continuity of meaning between the 1984 statutory definition of burglary and the 1986 revision that inadvertently deleted that definition. We know that Congress's 1984 definition was limited to buildings and buildings alone, and we also know from Taylor that Congress did not intend to substantially revise its definition when it accidentally deleted it. Yet that is precisely what the government advocates on pages 19 and 20 of its en banc brief. The fourth reason is that Mr. Harreld's reading is consistent with the principle of fair notice and lenity. And since we are interpreting a statute with very dramatic consequences for defendants, it seems only fair to insist that Congress speak with absolute clarity when changing the definition of an essential term like burglary. And fifth, the Supreme Court's generic definition provides clarity and predictability. Let me explain what I mean. Under Shepard and Taylor, generic burglary extends to every building. Unlike the common law, we no longer have to look at how that building has been used or what its purpose is to decide whether it's a dwelling house. And generic burglary likewise excludes crimes committed against vehicles. We don't have to look at the vehicle's use or purpose to decide whether it's a dwelling car or mobile habitation or automobile building. It's a vehicle, and so it's excluded. Now, the government's proposed expansion of the definition would eliminate that clarity. And make no mistake, once you tinker with the locational element to allow in some vehicles, it will be very difficult to decide where to draw the line. Which vehicles are going to be included in the new definition? You can't find that line just by surveying the various state courts' burglary statutes, because they're all over the place. Many states, at least 20 by my count in the government's appendix, include all vehicles or all vehicles that are used for transportation. And we know, and the government agrees, that generic burglary does not include burglaries of a vehicle, of all vehicles. Other states define burglary to include just some vehicles, like those used for storage or education or business or sleeping. And some states, like Texas, don't even require they be used for the special purpose, but that they just be merely adapted for it. Every state has the power to define its own crimes, including the crimes it chooses to call burglary. But federal law controls which of those crimes counts as a violent felony. Taylor and Shepard's federal definition eliminates the uncertainty about the locational element by saying all buildings, regardless of their use, regardless of their purpose, are venues for a generic burglary. And likewise, it eliminates uncertainty about motor vehicles by stating unequivocally, burglary of a motor vehicle is not a violent felony. Now I'd like to pivot away from the first issue and discuss our second issue, which concerns 30.02A3. Again, it has both a substantive question, is this a generic burglary, and a procedural question, is it a separate burglary crime than the theory in A1. Under Taylor's formulation of generic burglary and the 1984 statute, generic burglary requires a plan, that is, an intention to commit another crime at the time of the trespass, when the offender either enters a building or hides himself in a building. But Texas has expanded its crime of generic burglary to include a new theory of liability found in subsection A3. Under this theory, the prosecution is not required to prove an unlawful intention at the time of the trespass. The mental state substitutes for proof of some other crime. And in that sense, this theory is like felony murder. You prove another crime, and you don't have to prove the mental state. This new burglary theory was unique to Texas at the time the very small minority view today. This Court has long held that the new and unique theory is not generic burglary. And while I acknowledge that doubts have been raised about this point by at least one member of this Court, I encourage the full Court to reaffirm the holdings of United States v. Constante and United States v. Herrera-Montes. The most obvious reason to continue with that holding is the contemporaneous intent that is not present in A3, it is present in generic burglary. A trespass without contemporaneous intent is not generic burglary, and the Eighth Circuit very recently agreed in United States v. MacArthur. The next question is the procedural one. Are the two theories, A1 and A3, divisible into two separate offenses? This is a question of Texas law, but before we dive into state law, we need to know what we're going to be looking for. Mathis says, citing Shad v. Arizona, that we are looking for juror unanimity. And that is an important thing to know, because there are other concepts like lesser-included offenses or adequacy of an indictment, which we as federal practitioners might associate with the elements v. means distinction, but Texas courts do not. And as early as Calderon-Pena, the en banc court recognized that Texas treats its notice rules separately from what are the true elements in the narrow sense implied by Shad. Mathis provides a three-step roadmap for resolving this kind of dispute. First, we ask whether a state court decision definitively answers the jury unanimity question. If not, the second step, we examine the structure of the statute for things like different punishment ranges. And if we don't have an answer, we move to the third step, which I call the Kaczynski peak, where we look at the record documents, not to see what the government proved or didn't prove below, but to see whether they shed any light on this question of means v. elements. And finally, it's still not quite clear after performing all these steps, we have a default principle. That is that Taylor and the categorical approach demand certainty. And if we can't say with certainty that these are actual elements instead of means, then the enhancement does not apply. The government has not carried its burden. As we showed in our brief, we win under every step of the Mathis analysis. Now, the government has argued that the two burglaries described in A1 and A3 are a, quote, far cry from the Supreme Court's examples of indivisible statutes. But we know that is wrong because Texas's burglary statute is remarkably similar to Arizona's first-degree murder statute. Remember, in Shad v. Arizona, there were two ways to commit that offense. One subsection required proof of a culpable mental state premeditation, and the other replaced that mens rea element with proof of the elements of an additional crime. And even though those two theories sound very different, they kind of sound like different crimes, the Arizona state courts had ruled that they were not elements in the narrow sense discussed in Mathis and in Shad itself. In other words, the jury did not have to agree unanimously on which of those two theories was proved. What I take from that is we can't tell whether a statute is divisible just by looking at it. We can't trust our gut instinct to say it, and we can't even trust the use of a word like elements if we're not talking about jury unanimity. So we ask this Court to reverse. At this time, I would welcome any questions from the Court on either of these issues. All right. He's open. Well, one of the things that the government has asserted in its brief is that in Sylva v. 92, our Court said that burglary of habitation fits within generic burglary and that, according to the government, we have consistently applied that holding for 25 years. Would you please respond to that? This is a friendly question, by the way, in case you didn't. I'd be happy to respond to that, Judge Smith. Sylva said that Texas burglary of habitation of building is generic because it includes entry into a building. Sylva decided to question about buildings. Of course, the en banc Court is not bound by Sylva, but Sylva talked about buildings. That was the issue that was considered. There is not a case applying the Armed Career Criminal Act from the Fifth Circuit against this argument other than Herald 1. Well, you could have made this argument 25 years ago, 20 years ago, 15 years ago, 10 years ago, 5 years ago. I suspect someone could have made that argument, Judge Jones, but they didn't. And my client has no way to sue that person. When are we going to have certainty in our approach to sentencing? Your Honor, I think that certainty in this case would be achieved by following the very clear direction. Well, the reason I ask is that I've got a motion for panel rehearing in another sentencing case, which takes the position that the Minnesota murder statute is not generic murder. And so, you know, at some point, you say you're asking for certainty. It seems to me what you're really asking for is interminable potential for, you know, litigating every state statute at every minute level of detail. Your Honor, I would say that what we're asking for in this case is that the court follow what the Supreme Court said, and that is that burglary of vehicle is not generic burglary. Now, which Supreme Court? The United States Supreme Court. Where did it say that? It said that in Shepard. Not in the context of vehicles adapted for human habitation, which is a separate kind of vehicle, according to many state statutes. I agree, Your Honor. Why are you distinguishing between the trailer park burglary and the burglary of a home in a nice residential area? Your Honor, what we're distinguishing is between the vandalization of some unused motor vehicles at a storage facility and burglary of a building. But Texas has a separate definition in 3004 for burglary of those vehicle of vehicles, does it not? It does, Your Honor. But in this, I'm sorry, Judge Shelley. Excuse me, go ahead and finish your answer. But in this situation, we cited this case to the district court and to this court to show you that these vehicles are not being used as houses. They're not being camped in. They're mothballed somewhere. And that's seven counts of burglary of a habitation. What would you say about a school bus that had all of its wheels off and its engine out, removed from it, that a bear paw family was living in? That is, and someone comes in and takes everything that they've got, that's not burglary. And Your Honor, I guess I should say that I am not suggesting that that crime shouldn't be punished or that it's not as bad or that it isn't deserving of more punishment than burglary of a regular vehicle parked at the mall. What I am suggesting is that it is not burglary. Okay, so you're saying we should take the Supreme Court literally to the point of being foolish. That is, that someone, a particular vehicle that is a vehicle that is used solely for the purpose of a residence that has no means of movement should not be burglary, simply because the Supreme Court said vehicle. And we take them literally at that most extreme meaning of that term to the point of just being an idiot. Well, Your Honor, I don't want anyone in this court to be an idiot. I can give you some relief to that regard is because there is no state that has such a statute that defines burglary to include only immobile former vehicles or something like that, right? So we're not talking about specific facts. We're talking about the ways. You say the Supreme Court said vehicle and it meant vehicle, as I understand your argument. That's absolutely the argument. And the school bus or the trailer, I mean, and how many in trailer park, the wheels are off. There's no engine for it. I mean, but still, those people are not protected the same as someone who lives in a mansion. And I want to push back against that notion respectfully, Judge Jolly. We're not taking any protection away from them. This is not about how Mr. Harold should be taking protection. You're taking protection away from people who deserve protection against recidivist criminals or aliens who have committed serious crimes because this applies to the enhancement penalties that Congress or immigration penalties Congress has written. Judge Jones, again, I'm going to respectfully disagree because we're not talking about whether or not someone can go to prison for doing that. There's no question. Texas says they can. We're talking about what happens when 20 years later they're caught in possession of a firearm at a traffic stop. So, in other words, we're not saying it's okay to rob something if it has or to burglarize something if it has wheels in an engine. We're saying the Supreme Court has told everyone this is what burglary means. Let me ask you about, you keep talking about this Sandoval case, I assume is what you're referencing with the so-called mothballed or whatever they were. I may have missed it, but I didn't see where anybody challenged whether that was a habitation or whether that was appropriately brought under that section. It looked like they pled and got deferred adjudication. There's no appellate court that's ever passed on that. Is that really an exemplar? Is that the best you could do as an exemplar of look at how Texas really is using this statute way different than the Supreme Court wants them to? Well, Judge Hinges, I don't think it's the best I can do. The best I can do is to point to the statute itself which says if the vehicle is adapted for overnight accommodations, as everyone would agree an RV is, whether used or not, then it counts. Don't you agree that the Model Penal Code defines burglary structures involved in burglary to be vehicles adapted for overnight accommodation of persons? The Occupy Structure definition does include those vehicles as well. And didn't the Supreme Court in Taylor specifically approve the Model Penal Code definitions? No, Your Honor. In footnote 8. In footnote 8, the Supreme Court did mention the Model Penal Code as another example to reject the defendant's specific argument. But if Taylor was the end of the story, I agree this would be a closer question. I think this is why the divergence the government can show is all in that period between Taylor and Shepard. Shepard applies the Taylor principle in a way that is very clear. And now in this very complex area of law, which is if we know anything, Your Honors, if I could take one thing to the bank about the categorical approach, I can take burglary of a vehicle, nonviolent, not generic burglary. That's the one thing we know. Mr. Wright? Yes, sir. Moving, if I could move you from that, the generic question and the burglary at the outset to your third issue, which concerns me a little more because it's really more taking Texas law and trying to map it on to Mathis. If we were to say that we still think Texas law is a little bit indeterminate, would you say that certification is not an option? That the certainty principle you described means courts like ours cannot certify to Texas? That's the first question. And the related question is, does, this is just my ignorance, does Texas law have any authoritative pattern instructions? Is the Barry Goldwater, are those is the state bar? Does Texas look to any single pattern instructions as authoritative? So if I could start with the second question, I don't know. And I'd be happy to get a 28-J to the court if you're interested. I don't think so. But returning to the earlier question about certification, the court could do that if the question was just sort of philosophically what does Texas law require. The problem with that in this case is that you will then take that new answer that we do not know and we will be applying it to Mr. Harrell who committed his federal offense something like three or four years ago. So it does, you say it does run into tension with the certainty principle that, okay. Absolutely, Your Honor. And this is why we would say if this case were before the Supreme Court, that could change its own definition of generic burglary. Or if it were before Congress, who is really the institution who needs to fix any problem such as the one that Judge Jones and Judge Sholley have identified. I'm sorry, I didn't understand your last answer about certification. Assuming we disagree with you on the vehicle definition, why shouldn't we ask on the visibility, why shouldn't we certify that to the Texas Court of Criminal Appeals? Because that would be a recognition that this court doesn't know the answer. And yet you would hold Mr. Harrell responsible for knowing the answer four years ago when he possessed the firewall. Well, we're going to hold him responsible one way or the other, but shouldn't we be right about it, what Texas law is? If the definition is to change or if this court is to apply a new interpretation of Texas law inconsistent with every other court that's directly addressed the law as perhaps. Oh, if we disagree with you on divisibility, you're saying we can't apply it to your client without certification? I don't, that's not logical to me. If the court is certifying the question to the Texas Court of Criminal Appeals, that is a recognition that the law isn't clear. Has any circuit held that? That you can't certify because it says that it's not clear and therefore it would be illogical, as you say, or inappropriate? Your Honor, Martha says after performing these three steps, none of which is certification, after performing these three steps, if the law is not clear, Taylor demands certainty. And you still say a case like Martinez establishes Texas law on unanimity, double jeopardy, and duplicity, all three, or is Martinez just on two of the three? Martinez at least establishes unanimity, which is the only criterion in this complex of related issues. But duplicity and double jeopardy would get you to the same place if we had confidence. And I think that Ex Parte Cavazos sort of, I would win on that, that's what the Texas Court of Criminal Appeals, the most recent opinion says, one burglary offense, one entry, you know, it says from the Texas Court of Criminal Appeals, that's why we think the law is clear in our favor. But whether we're talking about double jeopardy, I'll say that when it gets to duplicity, when it gets to fair notice, I have to throw up my hands. Texas law is very confusing, it's hard to work its way through. But the judges who do this for a living, meaning all they do is apply Texas law, and to work out these problems of which offense is the element of prosecution, results-oriented engrossment, they have all said this is one offense, and both are charged. I thought there was a Texas Court of Criminal Appeals case that's Lange's that said that you can't have double jeopardy based on A1 and A3, because they have, they're different, they're different crimes. Your Honor, that's not the way that we read Lange. A1 doesn't require the completed burglary, correct? Oh, correct. Your Honor, and this is not a blockburger test, and this is why I say, I think Arizona versus Shad, or Shad versus Arizona shows that this is the way to go about this problem, because the same thing would be true in Arizona. Why can't Texas go about it the way it wants to? And Texas can, and all of the courts have looked at the jury unanimity question, which is the criteria. And in Mathis, the case, the court said, one has to wonder whether this was disingenuous. But it will be easy to determine the element's means, and that the opinions of this highest court, relevant court, are most telling. And it is a series of highest criminal court opinions that say that these have different elements, and they're different crimes. The most recent of the cases from the Court of Criminal Appeals is X Parque Cavas, that was the statistic opposite. Well the fact that, Cavathos, please, darn, if you're in Texas, you ought to at least have the courtesy to pronounce Spanish properly. But the point is, the fact that it's most recent doesn't mean it's bearing on the issue most properly, and Devon and Day said they're separate crimes, elements. And your Honor, if I could just respond to that. Go ahead, Mr. Tarr. Devon and Day are not about the jury unanimity problem. They're not even about the relationship of A1 to A3. They were about the relationship of a particular burglary prosecution to, in the case of one of them, another offense, trespassing, and in the case of the other one, in relation to the notice requirements, which the Envron Court held more than 10 years ago, and not the same thing as elements for purposes of Texas law. But when the question of jury unanimity has been put to Texas courts, not A1 has read the case the way the government says they're obviously required to do. It certainly isn't clear. Thank you, Your Honor. Thank you, Mr. Wright. You've reserved your rebuttal time. Mr. McKay. Mr. McKay has waived uninterrupted time. May it please the Court, on behalf of the United States, in my time with the Court this morning, I'll address the first issue of mobile habitations, and then Mr. Hendricks will address the second of statutory divisibility and categorical inclusion of Texas burglary. The Supreme Court stated clearly in Taylor that generic burglary encompasses what most state criminal codes would include as burglary. The only way to give effect to that statement is to recognize that generic burglary includes at least mobile habitations. Mr. Wright tells us that Shepard modified or clarified Taylor in that regard, so we can't look just to Taylor. I'm sure you agree with that. No. All Shepard did was restate what Taylor said, that it includes burglaries and enclosed spaces, but not motor vehicles and boats. It is undisputed. I have not read your Supreme Court briefs in other cases, I confess. I'll go back and look at them. Have you made this argument with the Supreme Court, and it's twofold. Number one, the 50-state search on what the statutes required in 84 and 86. And second, have you made the argument about the vehicle argument, mobile homes, specifically the Supreme Court, in briefing? No. This issue has not been made in the Supreme Court. It's never made its way to the Supreme Court. But the Department has made this argument in the Sixth Circuit instead, in Sims, in the Eighth Circuit. And I would note that also in the petition for rehearing on Bonk in the Eighth Circuit, which could not have, an action that couldn't have been taken without Solicitor General approval. I stand here, this brief, this position, was fully vetted with the Criminal Division, with the Solicitor General. My only question was, have you, have you made this argument in the Supreme Court, and has it been rejected? That's my question. No, not at all. This argument has not been presented in the Supreme Court. Would you address the issue of uniformity across states if we were to go Mr. Herold's way on this? Uniformity would be that generic, that burglary would essentially be written out, crossed out of the statute, because it's at the time of ACCA's enactment, 44 jurisdictions included non-permanent structures within their felony burglary statutes. Nineteen of those included non-permanent structures generally. Twenty-five of those included some non-permanent structures that are adapted for some specific purpose. And of those 44 jurisdictions, Texas took the narrowest position in only recognizing vehicles that were adapted for overnight accommodation, which the Blankenship decision from the Court of Criminal Appeals tells us is a bona fide habitation. Under Herold's position, if the court was to adopt that and say if it's movable, it can't be included in generic burglary, then 44, at least 44 of the state's burglary statutes have no effect. What about this exact clause, vehicles adapted for use as a habitation, or something similar to that, focusing on the vehicle idea, with or without an engine, with or without wheels, as was mentioned, but just the idea of a vehicle, how many states are we talking about? I believe that's going to be the 25 that recognize some sort of non-permanent structure, a vehicle that is used for a specific purpose, which would include... Somebody who's in those 25 states who burglarizes an actual house, the mansion we've been talking about, is going to not get an ACCA, but somebody in the other 25 states who burglarizes the mansion will get an ACCA. So that's the uniformity concern you're articulating. With one correction, there are 19 states that if they burglarized that mansion house, they wouldn't, because they wouldn't be included either, because those states include mobile conveyances, regardless of whether they're used for a house, or for storage, or for a vehicle, just for a vehicle. All in one blob, because Texas separates vehicles in a different... Precisely. Precisely. And here's a point that is very important, I want to make. And Judge Haynes pointed out that Texas prosecutes burglary of a vehicle differently. And the Supreme Court has never drawn this distinction between things movable and things immovable as being the line between generic and non-generic burglary. And there are two points in Taylor where the court tells us this. First, at page 588, the court tells us that Congress was acting broadly and sweeping in burglaries that most states considered to be serious enough to be punishable by more than a year. And as we see, current Texas law is a very good illustration of this, that most states, and I'm glad Mr. Wright agrees with me, I think this morning my count was also at about 20 states, that would include vehicles generally. But that's not most states. Most states, like Texas does now, would punish that as a misdemeanor. And what we know from page 588 of Taylor is that that is where the line is drawn between what most states would punish as felony burglary and what they would punish as something less. Because after all, we're discerning here what is the meaning of a violent felony. So it would make sense for the court to say the line is drawn at vehicles, automobiles... So when you say punish as a misdemeanor, is that the same as saying it would be charged as a misdemeanor? Yes. Yes. The court would reasonably draw the line and saying if most states are going to punish this as a misdemeanor offense, something less than a year in jail, then it can't be a violent felony. That is where the line is drawn. This is also corroborated at page 599 when the court says that some state statutes are going to be overbroad because they include places like automobiles and vending machines other than buildings. And some courts, the 9th and 6th in particular, have seized on part of that language, that part, but they've ignored that statement in its entirety. Actually what the court says when we look at the entire statement, they say a few states will be non-generic, overbroad, because they include automobiles and vending machines. And so when the court says a few states are going to be overbroad like that, and we know from looking at the statutes, almost every state includes some sort of thing that could be generally described as an automobile, we have to draw one of two conclusions from the Supreme Court statement. Either, I think as Mr. Harrell would have us believe, the Supreme Court was simply wrong. It didn't understand the state of burglary law across the nation when it said a few states would be overbroad. That's one reading, which I don't think is a reasonable reading. The better reading that is consistent with the entirety of Taylor and the intent of Congress, as Taylor tells us, the better readings to understand when they said a few states are overbroad, something less than a majority of states are overbroad, because they include the quintessential vehicle, the sedan sitting in a parking lot, not the Winnebago that someone, suitable to be someone's home. So not only do the majority of state statutes prove that the government is right here on this issue, we also enjoy the position of being entirely consistent with everything that Taylor tells us about congressional intent. Congress, two things in particular in addition to what I've already pointed to. Whatever members of Congress included when they meant burglary, Taylor tells us they certainly intended to include the classic notion of burglary, a crime that has always, since common law, focused on dwellings. And as I said in the very first brief that I filed in this case, for almost a million and a half people, recreational vehicles, travel trailers, mobile homes. What is your specific response to the defendant's argument that vehicle as used by the Supreme Court means vehicle, any kind of vehicle, and whether it is movable or not? How do you get around and express plain meaning of the word vehicle as used by the Supreme Court? By pointing to the very same two parts of Taylor in particular, most forcefully. At 588, if the court said that Congress intended to capture things that most of the states consider serious enough to be punishable, they wouldn't have included all vehicles. And second, in saying that some, a few, statutes are overbroad in including vehicles, they certainly couldn't have meant anything movable, anything that can be generally described as a vehicle, or else the whole state statutes are overbroad in this way, because we know at least 44 jurisdictions at that time. And actually a mobile home is pretty hard to move. Mobile home is pretty hard to move, and here really what happens. It doesn't move. No. Those mobile homes in a mobile home park sit there sometimes longer than houses sit there. Yes, but for up to a million and a half people each year, travel trailers and motor homes are their homes for at least six months of the year. And in Murillo-Lopez, this court recognized that the contemporary modern meaning of the word dwelling encompasses things that are not permanent, things like tents and a vessel that's adapted for overnight lodging. So knowing this, it would be completely inconceivable to think that Congress, in adopting an updated modern meaning of burglary, would embrace an outdated, antiquated notion of what is a dwelling or a place that can be subject to burglary. What do you do with the Sandoval case that is a record 311 or whatever that was this so-called mothballed motor homes? What's your response to that? A few. First, as your honor has already noted, this wasn't fully vetted by the Texas courts, the appellate courts, to determine whether or not this squarely falls within habitational burglary. But even if it does, Taylor is very, very clear. One, I push back a little bit on this characterization that these are mothballed. These were owned. There's nothing to suggest that the victims of these offenses didn't simply park their motor homes there two or three days earlier. These were owned and used vehicles. But even if they were not then being used as habitations, nothing in Taylor says that that was a requirement. In fact, Taylor says otherwise. It says that Congress intended to broadly encompass burglaries and they didn't require some heightened showing. So I don't have to be living in the house I'm trying to sell in order for a burglary of that to be a quintessential burglary of habitation. Correct. I've left house number one to move into house number two and house number one's empty and for sale. It's still burglary of habitation, Supreme Court, and everybody would agree. Correct. And Texas Court of Criminal Appeals discusses that at some length in Blankenship and saying that these have to be bona fide habitations. Now at some point, they wouldn't be. For example, the example that Mr. Wright gave an argument to the panel, throwing a cot in the back of a van does not convert it to a habitation under Texas law. It no more converts that van to a habitation than if I take a cot and put it in a lawnmower shed. It doesn't convert that lawnmower shed to a habitation either. Can you address the certification question? Is that a tool in our toolbox or is it not? I suppose it is. On my issue of mobile habitations, it's really unnecessary. Right. Are you not going to address the other? No, I'm not addressing that. You're not going to address the second one. I thought the time was he's going to address it. Mr. Hendricks is going to address that question. Okay, thank you. Another point that Taylor makes clear about congressional intent and including burglary as an act of predicate is that Congress sought to prevent defendants from running to arcane technicalities of burglary law to evade the reach of ACCA. I can't think of anything that would be more of an arcane technicality to say, well, burglary can't be burglary because the place I was breaking into isn't permanently attached to the ground. To use Taylor's language at page 593, things like that simply have little relevance to modern law enforcement concern. What about a prefab house? I mean, that's not really permanently attached to the ground. You come and you bring it, you put it on the, it can be moved, but it's not a vehicle. So it would seem like that would be burglary, whereas under their argument, the mobile home wouldn't be, and why are these even different? They shouldn't be different. Under Texas law, they're homes. The things that blankenship tells us to consider, things like, is somebody using it as a home? Does it have the normal accoutrements that we'd expect in a home? Utilities, bedding. Isn't it hard to draw, so getting to his argument that it's hard to draw a line between maybe the homeless person living in their Hyundai or whatever car, it's clearly a vehicle, versus the person living in a mobile home. Is that a hard line to draw? No, it's not. It's not an issue that's tangled Texas courts up to figure out what is a habitation and what isn't. I'm sorry, go ahead. We simply don't see the cases of the van with the cot in the back where the homeless man sits in his Hyundai. But Mr. McKay, on 99 days out of 100, you would be here telling us that we have to, we're stuck with the plain meaning in what's been said, and unless it was truly absurd, is this the point of foolishness that Judge Jolly was talking about, or why is this different? Well, let me be clear. I am still telling the court to go with the plain language. What the court plainly said in Taylor is that generic burglary is what most states then considered to be felony burglary, and there's no dispute, there can't be any dispute, that most states would include mobile habitation within counts as burglary. Only a few states count it as burglary. That's easy, but it also matches absurd results in that it effectively nullifies burglary across the nation, which Taylor tells us is not what we do, and would lead to absurd results. For instance, what's been pointed out, that habitational burglary would not count, but burglarizing the hay barn or shed would. Thank you. All right, thank you. Mr. Hendricks. May it please the court, Wes Hendricks on behalf of the United States. Mr. Hendricks, if Martinez is the correct statement of Texas law that we must look to your position on the visibility and jury anonymity is dead in the water, is it not? That's correct. If Martinez were the controlling precedent, and it is not. Martinez says that, and Martinez carefully analyzed Devon. In fact, by my count, Martinez mentioned the Devon case at least 10 times, so these were not ships passing in the night, were they? They were not. Martinez does address Devon. And when Martinez said that guided by Devon's prior analysis of section 3002, we conclude the legislature did not intend to create two distinct criminal offenses. Your position, though, seems to be that Martinez is only an inkblot, right? We don't need to pay any attention to it, because we must look to the fact that Devon mentioned the word element once or twice. Is that your position? No, that's not my position, Your Honor. My position is that Martinez is wrong. It is squarely at odds with Devon and DeVay, and Day, excuse me. It misapplied those rulings, and there is no way to square Martinez's holding and the handful of other unpublished opinions from intermediate appellate courts with . . . Well, that's kind of the last refuge of losing causes, that there's an opinion that's squarely on point, and you just tell us it's wrong, and we decide it. I guess that was for the Texas court system to figure out. But there is no Texas state opinion that goes with your position on specifically on your unanimity question. I believe built into the court of criminal appeals cases is more than just an isolated reference of elements. They're much more than that. These cases had to address and determine what were the constituent parts of Texas burglary in order to reach the whole . . . Well, of course, this is about methodology of how we figure out what Texas law is. Would you agree that we look to the extent that they're on point to intermediate court of appeals decisions to tell us what a previous, in this case 20 years earlier, court of criminal appeals decision said and meant, specifically when it's referred to, in this case, 10 times? It's legitimate for us to look to Martinez as authority. I'm sorry, I missed the first part. Is it legitimate for us to look to Martinez as authority since it construed the then 20-year-old opinion in Devon? It is legitimate for you to consider it. This court has considered intermediate appellate courts from Texas before in prior opinions. It's wrong. It's in conflict with a higher, the highest criminal court in Texas, and for that reason, we ask that you not follow Martinez because you simply cannot square it with the case after case after case from the court of criminal appeals. And let me give you a few examples. Let's switch a minute to the federal arena. Again, I'm trying to focus on the methodology that we use to figure out what the law is. So let's take this case. The Herald panel, as we all know, relied on Uribe. In fact, it said it was governed entirely by Uribe. Is that not true? That's correct. All right. And it was relying on Uribe's reading of Mathis. Is that not the case? That's the case. All right. So the Herald panel wasn't looking directly at Mathis. It was looking at what the It wasn't questioning whether Uribe was properly decided. It had no right to do that. In fact, the Herald panel, under our rule of orderliness, was bound by Uribe's reading of Mathis, much as we here today are bound by Martinez's specific reading and interpretation of Devon and Day. I disagree with that. You're not bound. You're not bound by Martinez. Mathis instructs us first to look to see if there's an authoritative state court decision that answers the elements versus means question. Dive into state law and see, has the highest criminal court said whether these are elements or means? And Texas, time and time again— Where does Mathis say it has to be the highest criminal court? Does Mathis say that? Mathis is authoritative state— Authoritative state law. Authoritative state court. I'm not sure if highest is part of the opinion, but I'm pretty sure it's not. Authoritative state court opinion. Excuse me if I misspoke, Judge Graves. Why shouldn't we ask Texas? Do you know the Solicitor General's position in Mathis? Isn't it true that the Solicitor General urged that certifications occur? I'm not sure of that. I believe that's correct, Your Honor, but I can't say with 100 percent— Would it be significant, then, that the Supreme Court didn't make any comment on that? Or could you address the certification question? Absolutely. And if you could, also, my simple question, is there an authoritative set of pattern instructions in Texas? Regarding certification, this court, I believe, does have the authority and discretion to certify it to the Texas Court of Criminal Appeals, if it so chose. It need not do that here because we have Texas case law, the face of the statute, and examples from Mathis that demonstrate that A1, A2, and A3 set out distinct defenses with distinct elements. We also have an alternative argument that even regardless of divisibility, A1 and A3 both qualify categorically as generic burden. And for that reason, you can simply avoid the divisibility question, should you choose. But we don't have any examples of other circuits using certification as a tool. No, you don't. And I don't believe you need to certify. I don't believe you should. I think Mathis gives us a road map. Could you respond to his argument that we actually can't, because the certainty principle means that Harold wouldn't have known if we don't know. Certainty, we have the requisite certainty here. Mathis gives us, again, a road map to— I know that's your position, but I'm asking you to assume that there isn't certainty. Their first argument is Martinez controls, and that may be the answer. But assuming you're right that Martinez somehow doesn't, if there weren't certainty, can we? Because Harold wouldn't have had that certainty himself. I think it would be a difference of why the Court was certified. If it was certified because this is absolutely uncertain, then his argument would have some force. If it were certified because we think we know what it means, but we have this option to ask Texas, why don't we just go ahead and do it, then I don't think his argument— My last question is, just to pattern instructions, could you address, do you know whether there is an authoritative set? Well, there is a set of patterned criminal jury instructions in Texas. They're not—I'm not sure if they're authoritative or not. They're suggestive, like most patterns. And they reflect the state of Texas law. On the one hand, they say that for A1 burglary, for instance, and A3 burglary, for instance, if those are charged, it lists the five sets of elements for one, four sets of elements for another, calls them elements, and says the jury must be unanimous on every one of those elements. Ms. Sanders? Yes. Ms. Jones has a question. No, actually, I wanted to hear your argument sometime. But apart from—I have a very short question, and that is, I don't understand this certification business where it couldn't possibly benefit Mr. Herold because, of course, it would lay out the law for every future defendant, would it not? It would. It would. And my argument is really twofold. My argument is, in Texas, Texas case law provides that jurors must unanimously agree. There's a jury unanimity requirement in Texas. That can be found in the court of criminal appeals cases of MEO, which is the best I can say it. It's N-G-O. Court of criminal appeals has also, time and time again, said that A1 and A3 they're distinct types of conduct, and therefore they have distinct elements. And that is not just a one-off mention that's unnecessary to the holding of those opinions. Those were prerequisites to the holdings. In Day, the court had to decide whether criminal trespass in Texas was a lesser included offense of burglary. The only way to resolve that issue is to determine, well, what are the elements of criminal trespass and what are the elements of burglary? And in Day, clear as day, they set out point by point. They are distinct offenses. The court of criminal appeals went so far as to say it is obvious that they are distinct offenses. Here are the elements of A1. Here are the elements of A2. Here are the elements of A3. They are different. But the court of criminal appeals doesn't stop there. In Langs v. State, the court had to determine whether there was a double jeopardy problem. And Blackburger is a same elements test. So the only way to resolve whether there was a double jeopardy problem was to determine, are the elements of A1 and A3 different, and are they the same as the lesser included? But in Day, I'm taking you back half a step here. In Day, the court wasn't comparing the various components of 30.02a, which is what our job is, to one another, but instead was different process in question that Day and Devon did not address, but Martinez did. The only way to decide whether criminal trespass is a lesser included of burglary is to compare the elements of burglary to the elements of criminal trespass. And we think that is just at loggerheads and at odds with Martinez. But even if Martinez were controlling, and this court needed to give it some significant weight, it is clearly wrong. It does address Devon, and it says, okay, unanimity in Texas is, we focus on the actus reus, and A1 and A3, they're basically the same crime. There's only one small difference. And just the face of the statute shows that is not so. There are multiple, many distinctions, as reflected in... I can't ever remember a case in our court where we were interpreting state law, which we do, of course, often in diversity cases, but here we agree that state law provides the decision. I can't ever remember where we discounted the authoritative nature of a state court decision by saying that it's wrongly decided. Maybe in dictum, maybe somebody drops a footnote, but we still consider it controlling because it is the rule of decision. It just seems to me that you so weakened your argument by falling back on whether Martinez was wrongly decided, especially, as I've said, I'm sorry, I'm saying it for the third time, that Martinez referred repeatedly to the argument of counsel alone. It's not any different than many members are doing. He's trying to address the questions. Let's be patient, and we'll get the argument done. Your Honor, in this court's opinion in Arete, it notes that, R-A-E-T-E, it notes that when the highest court has spoken, you, of course, follow the highest court. So, isn't that the normal Erie way? The normal Erie way says highest were bound, and that's authoritative, and intermediate is persuasive authority, and that's just everyday, run-of-the-mill Erie. Is that right? Yes, that's right. Let me address a few more things. Even if Texas case law were somehow cases with Martinez, but even if it were, Mathis says, you know what, sometimes that's going to happen. And that's okay, by the way. Mathis says don't stop there. You don't lack certainty even if courts in the state are either confusing or just have not addressed it. You go to the face of the statute. And the face of the statute, Uribe correctly held that the structure and the face of this statute indicate these are distinct elements, not means. And it did so for two reasons. First, the statute lays out in three different distinct subsections, three distinct types of conduct. Entry with intent is not the same thing as remaining concealed with the intent, nor is it the same as entering and then actually committing the crime. And I wanted you to talk about that. Your argument on that is that is also generic burglary because by committing the crime, I'm remaining in with the inappropriate intent and therefore fall under the Taylor definition of generic burglary. That's correct, Your Honor. Pretty reached that conclusion. In the Sixth Circuit, Quarles reached the same conclusion. In the Fourth Circuit, Bonilla reached the same conclusion. And this would just absolutely moot the divisibility. Martinez's issue would go away if he accepted that argument. Yes, Your Honor. Martinez would go away. And we do believe that is correct. That is A3 burglary is just as much generic burglary as A1. And the reason is Taylor was concerned with three constituent parts in generic burglary. So let me ask you this. If John Doe enters a building, normally, let's say a Kroger, and then while sitting there forms the intent to commit a crime but never does, does that violate any of these three? Doesn't conceal himself. He's standing in the Yes. No, it doesn't. I don't believe it does. I want to make sure I'm And is that an important distinction that the first two are the intent? It's punishing the intent. The third is punishing the conduct. You either have to do it or attempt to do it. Yes. You can't just be thinking about it. That's right. And when someone does it, they have necessarily remained in that place with the intent to commit a crime. Because if you actually commit it, of course, you have the other circuits have embraced. This Court should embrace it as well. Doing so just gets rid of any question of divisibility in Texas law and just makes Texas burglary categorically generic. This Court and the special concurrence in Burnell-Aveja asked this Court to embrace that logic. We support that position. It lays out in great detail why that reading, that A3 qualifies as generic reading, is embraced by Taylor. It's embraced by the majority of states. And the alternative reading in Herrera-Montez is embraced by a very, very few states, only five. And for these reasons, Your Honor, because Texas case law, the face of the statute and examples, demonstrate that it's divisible, we would ask this Court to stay the course and continue to hold that the Texas statute is divisible. Alternatively, we'd ask that you can just simply ignore that and hold that Texas burglary, A1, A2, and A3 qualifies as generic. And therefore, this Court should affirm. Thank you for your indulgence, Chief. Thank you, Mr. Hendricks. I think you're able to complete your statement. All right. Back to you, Mr. Wright, for rebuttal. Yes, Your Honor. If I could start with Mr. Hendricks' last point. We, of course, didn't file a reply before the en banc court in this case, and we suggested in our brief that if the government did take that position, in other words, follow Judge Owen's concurrence in that case, Burnell-Aveja, we'd like a chance to brief it supplementally. Whether you give us that or not, I do want to say that contemporaneous intent, that is the main, most obvious reason the Eighth Circuit held it. This Court has held it for many years. But we think there are other reasons it's non-generic. And I just want to sketch those out briefly. This is your main shot. A second way that it's different, that A3 burglary is different from remaining in, is that if an owner acquiesces in the unlawful presence, for instance, the young lady kicks young man out, says, never come back, I can't see you again. He comes in unlawfully, without her permission, and says, I just want to talk. And she says, okay, we'll talk. And then he commits a felony. He's committed a burglary under A3, but he hasn't committed a remaining in because the trespass and the intention are not there. That's another way that it's different. A third one. A3 obviously includes non-intentional felonies. So, you know, classic burglary, you have to have the plan. It has to be purposeful. But reckless felonies, injury to a child, even felony murder, which is possibly a strict liability offense, there is no intent in the sense of classic burglary. And fourth, as we alluded to in our petition, the facility could be open to the public. That requirement, not open to the public, is only present in A1 burglary. Now, I'll say that my friends have not had a chance to respond to these arguments. I don't mean to spring that on them. But I think it would be worse if the court is going to revisit. How can you have a remaining in that's not an unlawful entry, then? The classic scenario and what Lefebvre says, the reason this theory was invented, the A2 theory, was you come in with permission and then you hide. You wait. You wait until it's closed. Everybody leaves, right? You have to hide for a remaining in? That's what the states meant. I mean, that's what Lefebvre says that theory is. Does the hiding come from the Supreme Court, that they have to hide? The Supreme Court says remaining in, but they refer to the Lefebvre treatise, which is, and Lefebvre says, this is where this theory came from. But for these reasons, again, I think we should brief it. I don't mean to spring this on them, and I think they'd say it, right, that that's not the point. But I think if you're going to reconsider this law, then we ought to really look at it. You know, in other words, if we're not going to accept it, this is the first time at the en banc stage the government's taken the position that it's generic burglary, and we should look into it closer. I want to return to the question about mobile homes. There's a lot of talk about immobile vehicles. I have no objection to people who live in manufactured homes. I grew up in one. I'm not suggesting that that's not the same thing as a mansion. We're not talking about things that don't have a registration, right? All I'm going with is where the Supreme Court says if it is an automobile, if it's a motor vehicle, it doesn't count. Do you take issue with the government's characterization, its 50-state search, of what the law was in the 50 states in 84 and 86? Or do you agree with that or disagree? I do take issue with the statement that fewer than half included all vehicles. Because in addition to the 18, 19 that include all vehicles, you've got about five or six that include vehicles used for transportation or public transportation, right? So that puts you over the edge. We know that those are not generic burglary, even though if we did a strict nose count, we'd get right at halfway or right above it. Let me add to that, that also included in what the government calls adapted for specific purposes, you've got the Iowa statute. So I can rely on Mathis to say, whatever the scope of this generic burglary is, Mathis says it doesn't include the Iowa statute. There's no question that that's a good point for you. But at the same time, the Court absolutely did not discuss that provision of the Iowa statute, did it? Your Honor, if we're debating about the scope of generic burglary— You're agreeing with me, correct? I'm not sure that I am. So I want to clarify. If we're debating about the scope of generic burglary, I say, let's go with what the Supreme Court said. If it's a motor vehicle, it's not generic burglary. My friends say, if it's a motor vehicle, really motor vehicle, but not if it's a motor vehicle that's also a building or a business purpose or something like that, then what we would expect to see in the first case where the Supreme Court considered an adapted vehicle for a specific purpose, and the Supreme Court is going to say, why is the Iowa statute non-generic? If my friends are correct, the Supreme Court says this is non-generic because it reaches vehicles, including those used for storage. It reaches vehicles like ice cream trucks, including those used for business. It reaches vehicles used for hiding from someone who's trying to hurt you, like the Iowa statute, and therefore it's non-generic. But that is not what the Supreme Court said, Judge Jones. They said it is non-generic because it reaches a vehicle. But Texas law defines vehicle differently from a vehicle modified for habitation. I mean, Texas law is not—based on Texas Court of Criminal Appeals decisions, they draw a distinction between vehicle qua vehicle and vehicles used as dwellings. They said a van cannot be a vehicle, even if you live in it. I would not agree with that. Now, the government has a position that under Blankenship you could make that argument, but what the statute says is if it's adapted for the overnight accommodation of persons and its provided elements. Burglary of an adapted vehicle habitation is a species of burglary of a vehicle in the generic sense. Even if Texas has chosen to sort of have aggravated, super aggravated vehicle burglary, if it is an RV or if it is a trailer with a sleeping quarters— But you don't disagree that the upshot of your position is to say the burglary is not burglary for purposes of ACCA and the immigration law in at least half of the states? I do disagree with that, Your Honor, or at least I don't think my position— Because vehicles is vehicles, according to you. Right. And so this is why I say on the first issue, we're only talking about the substantive question. I am not prepared to address the divisibility of all of those other statutes. I'm not talking about divisibility. But I think that you would have— Oh, so some of them may be, well, why isn't Texas divisible since it clearly divides vehicles from other kinds of burglaries? It might be divisible as to the definition of habitation, but on this record, the government can't show which one was involved. But still, you're saying vis-a-vis vehicles, at least 25 states don't even begin to satisfy the federal test. To the extent they reach vehicles. In other words— Well, I was— I mean, so what? That's just positive, is it not? These are states where it's unquestioned— That's why you have alternative arguments. I win if it's non-generic, or alternatively, I win if it's non-divisible, right? Your Honor, to the extent they reach regular vehicles, regular old vehicles, it's undisputed, non-generic. Iowa, vehicles adapted for a specific purpose and is on that count, along with a lot of others. It's undisputed. That's non-generic, right? So at that point, you can no longer get to whatever rule the government is advocating by a nose count. Your Honor, I can see that my time has expired. We do ask you to reverse. All right. Thank you to counsel on both sides. Able argument in a tough case. We appreciate the briefing and argument. It'll be submitted. We'll stand in 10-minute recess and reconstitute the panel.